## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| GS Labs, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>Medica Insurance Company,<br><br>        Defendant. | Case No. 22-cv-2988 (SRN/TNL)<br><br><br>**AMENDED<br>ORDER ON DEFENDANT'S<br>MOTION TO DISMISS**[1] |

Kyle R. Kroll, Christianna L. Finnern, David A. Aafedt, and Thomas H. Boyd, Winthrop & Weinstine, PA, 225 S. 6th St., Ste. 3500, Minneapolis, MN 55402, for Plaintiff

Jamie R. Kurtz, Jeffrey Sullivan Gleason, and Stephanie Alicia Chen, Robins Kaplan LLP, 800 LaSalle Ave., Ste. 2800, Minneapolis, MN 5402, for Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Medica Insurance Company's Motion to Dismiss [Doc. No.10]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court grants Defendant's Motion to Dismiss.

## I.    BACKGROUND

Plaintiff GS Labs, LLC ("GS Labs"), a provider of COVID-19 diagnostic testing, first filed suit against Medica in this Court in October 2021. (*See GS Labs v. Medica Ins.*

---

[1] This Amended Order amends ECF No. 38 only to correct a typographical error in the caption and in the enumerated paragraphs on the final page. It is otherwise identical.

Co., ("*GS Labs I*"), No. 21-cv-2400 (SRN/TNL), Compl. [Doc. No. 1].)[2]  GS Labs alleged

that Medica refused to fully reimburse it at the publicly-posted cash price for COVID-19

diagnostic testing that GS Labs had provided to over 16,000 Minnesotans insured by

Medica. (*Id.* ¶¶ 1–2.) GS Labs asserted two federal claims for the violation of the

Coronavirus Aid, Relief, and Economic Security ("CARES") Act, as well as state law

claims for unjust enrichment, negligence per se, and punitive damages. (*Id.* ¶ 59–133.)

GS Labs moved for partial summary judgment and Medica moved to dismiss under

Rule 12(b)(6) for failure to state a claim. (*GS Labs I*, Doc. Nos. 8, 29.) This Court granted

Medica's motion and denied GS Labs' motion on September 20, 2022. (*GS Labs I*, Doc.

No. 54.) Specifically, the Court held that "there is no private right of action or remedy

under the CARES Act for diagnostic-testing providers to recover reimbursement for

COVID-19 testing at the publicly-posted cash price." *GS Labs I*, No. 21-cv-2400

(SRN/TNL), 2022 WL 4357542, at *11 (D. Minn. Sept. 20, 2022). Because GS Labs'

CARES Act claims for monetary and declaratory relief failed as a matter of law, the Court

dismissed them with prejudice. *Id.* at *12–13. The Court declined to exercise supplemental

jurisdiction over GS Labs' remaining state law claims and dismissed them without

prejudice. *Id.* On October 19, 2022, GS Labs appealed to the Eighth Circuit Court of

Appeals (*GS Labs I*, Doc Nos. 58, 61), where the appeal is pending.

---

[2] Citations to documents filed in *GS Labs I*, No. 21-cv-2400 (SRN/TNL), include
the case name. All citations to documents without a case name refer to documents filed in
the instant case, No. 22-cv-2988.

Three weeks later, on November 9, 2022, GS Labs sued Medica again, this time in Hennepin County District Court. (*See* Compl. [Doc. No. 1-1].) Medica removed the case to federal court, resulting in the instant lawsuit, "*GS Labs II*." (Notice of Removal [Doc. No. 1] ¶¶ 7–8.)

In its Complaint, GS Labs largely repeats the factual allegations from its first complaint, verbatim. (*See* Compl. ¶¶ 1–2, 4, 9–14, 16–27, 29–30, 32–39, 41–55.) However, GS Labs also alleges that when Medica's insureds scheduled testing appointments, they assigned to GS Labs any rights they held under insurance plans issued or facilitated by Medica, allowing GS Labs to pursue statutory and contractual claims on the insureds' behalf. (*Id.* ¶¶ 56–63, 128–36.) GS Labs also alleges that Medica, in its capacity as an administrator, intentionally caused third-party health plan providers to refuse to reimburse GS Labs for diagnostic testing provided to members of those plans. (*Id.* ¶¶ 64–82.)

In addition to reasserting the unjust enrichment and negligence per se claims that this Court dismissed without prejudice in *GS Labs I*, GS Labs now asserts claims for tortious interference with prospective economic advantage, breach of contract, and a claim under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id*. ¶¶ 83–136.)

In a similar case in this District, albeit brought by an insurer, BCBSM, against GS Labs, GS Labs asserted counterclaims identical to the claims it had asserted in *GS Labs I*, but also later included a counterclaim arising under ERISA. *See BCBSM, Inc. v. GS Labs, LLC*. No. 22-cv-513 (ECT/DJF), 2023 WL 2044329, at *1 (D. Minn. Jan. 30, 2023). As in the instant case, the dispute in *BCBSM* centers on the insurer's refusal to reimburse GS

3

Labs for COVID-19 testing at GS Labs' requested rate. *Id.* at *1–2. In January 2023, Judge Tostrud ruled that GS Labs had failed to state a claim under the CARES Act, but had plausibly alleged a cause of action under ERISA. *Id.* at *4, *10–12.

In the instant case, Medica now moves to dismiss, arguing that res judicata bars GS Labs' claims for tortious interference (Count III), breach of contract (Count IV), and underpayment of ERISA benefits (Count V). (Def.'s Mem. [Doc. No. 12] at 6–9; Def.'s Reply [Doc. No. 20] at 1–6.) GS Labs argues in response that res judicata is inapplicable. (Pl.'s Opp'n [Doc. No. 17] at 35–41.)

## II.   DISCUSSION

### A.   Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.*

"Dismissal on the basis of res judicata at the pleading stage is appropriate if the defense is apparent on the face of the complaint." *Magee v. Hamline Univ.*, 775 F.3d 1057, 1058–59 (8th Cir. 2015) (quoting *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2012)). The "face of the complaint" includes public records, materials attached to the complaint, and materials embraced by the complaint. *C.H. Robinson*, 695 F.3d at 764. Because *GS Labs I* is a matter of public record, the Court finds

it appropriate to consider the ruling and associated documents, as well the ruling in *BCBSM. See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

**B.      Res Judicata**

While res judicata encompasses both issue preclusion and claim preclusion, Medica asserts only claim preclusion here. Claim preclusion prohibits a party from filing sequential lawsuits when claims asserted in a subsequent suit were or could have been raised in a prior suit. *Magee*, 775 F.3d at 1059; *Jaakola v. U.S. Bank Nat'l Tr. Ass'n*, 609 Fed. App'x 877, 979–80 (8th Cir. 2015). The doctrine of claim preclusion therefore promotes finality, "encourages reliance on judicial decisions, bars vexatious litigation and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

To establish claim preclusion, Medica must show: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Magee*, 775 F.3d at 1059 (quoting *Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*, 533 F.3d 634, 639 (8th Cir. 2008)).

Here, GS Labs appears not to dispute that *GS Labs I* satisfies the second and third elements: the Court had proper jurisdiction over a lawsuit against the same party, Medica. (*See* Pl.'s Opp'n at 35–41.) The success of Medica's Motion to Dismiss therefore hinges on the first and fourth elements of claim preclusion.

**1.      Final Judgment on the Merits**

The Court's Order in *GS Labs I* dismissed the CARES Act claims with prejudice under Rule 12(b)(6) and dismissed the unjust enrichment, negligence per se, and punitive

damages claims without prejudice. *GS Labs I*, 2022 WL 4357542 at \*13. Medica argues that the Order was a "final judgment on the merits" and precludes all of GS Labs' claims in the present suit, while GS Labs argues that the Order does not constitute a "final judgment on the merits" for any of its claims. (Def.'s Mem. at 7–8; Def.'s Reply at 1–2; Pl.'s Opp'n at 36–37.) The answer lies somewhere in the middle.

### a.    Claims Subject to Preclusion

As to the dismissal with prejudice, "it is well-established that a Rule 12(b)(6) dismissal is a 'judgment on the merits' for res judicata purposes unless the plaintiff is granted leave to amend or the dismissal is reversed on appeal." *United States v. Maull*, 855 F.2d 514, 516 n.3 (8th Cir. 1988); *Glick v. Ballentine Produce, Inc.*, 397 F.2d 590, 593 (8th Cir. 1968) ("[A] dismissal for failure to state a cause of action is a final judgment on the merits sufficient to raise the defense of res judicata in a subsequent action between the parties."); *Risby v. Johnson*, No. SACV 16-02275 AG (JCGx), 2017 WL 8793329, at \*2 (C.D. Cal. June 5, 2017) ("[T]his Court's previous order . . . concluding that federal law did not create a private right of action . . . was a final adjudication on the merits."). No exceptions are present here: the Court did not grant GS Labs leave to amend its complaint and, although an appeal is currently pending, the Eighth Circuit has not reversed *GS Labs I*. In short, the dismissal of the CARES Act claim with prejudice is a judgment on the merits entitled to preclusive effect.

However, a dismissal without prejudice does not function as a judgment on the merits for res judicata purposes, particularly when based on jurisdictional considerations. Both the Eighth Circuit and secondary authorities are in accord on this point. *See Al-*

*Saadoon v. Barr*, 973 F.3d 794, 801 (8th Cir. 2020) ("Ordinarily, a judgment dismissed without prejudice [for lack of subject matter jurisdiction] does not create a res judicata bar."); *Pilgrim v. State Farm Mut. Auto. Ins. Co.*, No. 4:05-cv-00522, 2005 WL 8164520 (W.D. Ark. Sept. 1, 2005) (holding that res judicata did not bar new state law claims where the court in the first action declined to exercise supplemental jurisdiction over original state law claims and dismissed them without prejudice); Restatement (Second) of Judgments § 25 cmt. e (Am. L. Inst. 1982) ("If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (*or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion*), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.") (emphasis added); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4436 (3d ed. 1998) ("Discretionary refusal to exercise supplemental jurisdiction likewise does not preclude a subsequent action on state-law claims in a state court or in a federal court that has an independent basis of subject-matter jurisdiction."). In *GS Labs I*, the Court had supplemental jurisdiction over the state law claims and chose not to exercise it. Accordingly, the dismissal without prejudice of GS Labs' state law claims has no preclusive effect.

Combining these principles, and for the reasons discussed below, the Court gives partial preclusive effect to the *GS Labs I* decision. *See Wintermute v. Kan. Bakers Sur. Co.*, 630 F.3d 1063, 1067 (8th Cir. 2011) ("[*R*]*es judicata* applies to all final claims, even if other claims within a case remain alive."); Restatement (Second) of Judgments § 13 cmt.

e (explaining that a judgment may be final as to part of an action or claim, with the action continuing as to the rest).

Medica argues that the Court's dismissal of GS Labs' CARES Act claim in *GS Labs I* subjects all of the new claims in this lawsuit to claim preclusion, relying on *Magee*, 775 F.3d at 1059. (Def.'s Mem. at 6–8; Def.'s Reply at 1–2.) While *Magee* is procedurally on all fours with this case, a close examination reveals that Medica overstates *Magee*'s holding.

In *Magee*, the plaintiff sued her former employer, Hamline University ("Hamline"), pursuant to 42 U.S.C. § 1983, alleging that she had been fired in retaliation for exercising her First Amendment rights. *Magee v. Trustees of Hamline Univ.*, 957 F. Supp. 2d 1047 (D. Minn. 2013) ("*Magee I*"). Her complaint also included state law claims for intentional interference with contract and breach of contract. *Id.* On Hamline's Rule 12(b)(6) motion, the district court dismissed Magee's § 1983 claim with prejudice but declined to exercise supplemental jurisdiction over her state law claims, and instead dismissed them without prejudice. *Id.* at 971. Magee appealed. *Id.*

While the appeal of *Magee I* was pending, Magee filed a new complaint against Hamline, this time in state court, which Hamline removed to federal court based on federal question jurisdiction. *Magee v. Hamline Univ.*, 1 F. Supp. 3d 967, 970 (D. Minn. 2014) ("*Magee II*"). In *Magee II*, Magee alleged violations of 42 U.S.C. § 1981 for racial discrimination, repeated her allegations of intentional interference with and breach of contract, and added new statutory and common law claims arising under state law. *Id.* Under Rule 12(b)(6), Hamline moved to dismiss Magee's new § 1981 claim and state law

claims based on claim preclusion, arguing that the new claims arose from the same employment events at issue in *Magee I*. *Id.* at 972.

The district court held that the dismissal with prejudice of Magee's Section 1983 claim in *Magee I* was a final judgment on the merits barring her from asserting a Section 1981 claim in the second suit. *Id.* at 976. The court reasoned that Magee was "required, at the very least, to bring all of her claims based on original federal jurisdiction in *Magee I*." *Id.* Magee argued that the first court's refusal to exercise supplemental jurisdiction over her state law claims eliminated the preclusive effect of the judgment. *Id.* The district court rejected this contention:

> This [interpretation] would lead to the absurd scenario where a plaintiff could bring individual federal claims in a piece meal fashion each time her case is dismissed for refusal to exercise supplemental jurisdiction. For example a plaintiff could bring a § 1983 claim and state claims, upon dismissal of the § 1983 claim and refusal to exercise supplemental jurisdiction, the plaintiff could return to state court bringing a § 1981 claim and state claims. If that case is removed, the court could again dismiss the only federal claim, refuse to exercise supplemental jurisdiction, and the plaintiff could then return to state court and assert a Title VII claim based on the same set of facts or occurrence. Under Magee's interpretation, res judicata would be powerless to stop this type of repetitive litigation that it is specifically designed to prevent. The Court's refusal to exercise supplemental jurisdiction over state law claims in *Magee I* does not automatically provide Magee with an unlimited number of opportunities to raise new federal claims.

*Id.* at 976–77 (internal citation omitted). The court therefore dismissed her Section 1981 claim with prejudice. Importantly, the court again declined to exercise supplemental jurisdiction over the state law claims and expressed "no opinion on the preclusive effect of *Magee I* with respect to these new state law claims." *Id.* at 977–978.

Magee appealed. The Eighth Circuit affirmed, focusing on the "same claims or causes of action" element of res judicata. *Magee*, 775 F.3d at 1059. The court did not comment upon the district court's decision to give partial preclusive effect to *Magee I* or its decision not to exercise supplemental jurisdiction over the state law claims. *Id.* It simply stated, "Because the doctrine of res judicata bars Magee from bringing her § 1981 claim, we affirm the district court's dismissal of that claim." *Id.* at 1059–1060.

Because GS Labs' two suits against Medica follow an identical procedural pattern, the decisions in *Magee* provide guidance that the dismissal of the CARES Act claim in *GS Labs I* precludes only the ERISA claim in *GS Labs II*. The Court has original jurisdiction over the ERISA claim, as it had over the CARES Act claim, and thus the two should have been brought together in *GS Labs I. Magee II*, 1 F. Supp. 3d at 976. But the dismissal without prejudice of the state law claims in *GS Labs I* renders res judicata inapplicable to GS Labs' new state law claims of tortious interference and breach of contract. *See Kulinski v. Medtronic Bio-Medicus, Inc.*, 112 F.3d 368 (8th Cir. 1997) (dismissal of first action based on federal question jurisdiction precludes another action based on federal question jurisdiction, "but not the same claim under a different theory and jurisdictional basis.").

### b.      Standing

GS Labs asserts that the dismissal with prejudice in *GS Labs I* cannot have preclusive effect because it was a ruling on standing, and, therefore, not a final judgment "on the merits." (Pl.'s Opp'n at 38 ("[T]he nature of the Court's holding . . . was effectively that GS Labs lacked standing to assert claims under the CARES Act because it did not have a private cause of action under the CARES Act.").) This argument fails for several reasons.

10

First, the Court nowhere mentioned standing in *GS Labs I*. By contrast, in the case on which GS Labs relies for support, *McCarney v. Ford Motor Co.*, the district court in the first suit specifically held that the plaintiff lacked standing. 657 F.2d 230, 231 (8th Cir. 1981). The Eighth Circuit therefore interpreted the court's dismissal as a quasi-jurisdictional justiciability determination which had no preclusive effect on the claims in the second suit. *Id.* at 233–34.

Moreover, standing jurisprudence has evolved significantly since *McCarney*. GS Labs does not articulate whether it believes this Court ruled on constitutional standing or "statutory" standing, although "statutory" standing seems more plausible. (Pl.'s Opp'n at 38; Jan. 26, 2023 Hearing Tr. [Doc. No. 24] at 32:8–9 ("Maybe you could call it statutory standing.").) Regardless, when a plaintiff has constitutional standing but cannot meet certain statutory criteria, the "'statement that [plaintiffs] lacked 'standing' is simply another way of stating that [plaintiffs] had failed to establish on the merits [an element of their claim] entitling them to relief.'" *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1014 (8th Cir. 2003) (quoting *United States v. Hooper*, 229 F.3d 818, 820 n.4 (9th Cir. 2000)); *see also Finstad v. Beresford Bancorporation, Inc.*, 831 F.3d 1009, 1014 (8th Cir. 2016) ("[A] dismissal for lack of 'statutory standing' is a 'ruling on the merits.'").

Indeed, the Supreme Court has carefully explained that analyzing a particular plaintiff's right to sue under a federal statute involves "traditional principles of statutory interpretation," not standing considerations. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–128 (2014). In clarifying its jurisprudence, the Court noted that,

> We have on occasion referred to this inquiry as "statutory standing" and
> treated it as effectively jurisdictional. That label is an improvement over the
> language of "prudential standing," since it correctly places the focus on the
> statute. But it, too, is misleading, since the absence of a valid (as opposed to
> arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*,
> the court's statutory or constitutional power to adjudicate the case.

*Id.* at 128 n.4 (internal citations and quotations omitted).

Following *Lexmark*, the Eighth Circuit has repeatedly recognized this distinction between statutory interpretation and standing analysis. *See, e.g.*, *Graham v. Young*, 886 F.3d 700, 704 (8th Cir. 2018) ("[T]he analysis of statutory rights . . . go[es] to the merits of a plaintiff's claim, not to the plaintiff's 'standing' to be in federal court."); *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040–41 (8th Cir. 2016) (noting that whether plaintiffs could bring an action under ERISA section 502(a)(1) or (3) as "plan-designated beneficiaries" is not a question of standing); *Am. Chems. & Equip. Inc. 401 (K) Ret. Plan v. Principal Mgmt. Corp.*, 864 F.3d 859, 863 (8th Cir. 2017) ("The question whether a federal statute creates a claim for relief is not jurisdictional. Instead, we ask whether [plaintiff] has a cause of action under [the statute], which requires us to apply traditional principles of statutory interpretation." (citations and quotations omitted)). These post-*McCarney* developments demonstrate that *GS Labs I* was a merits ruling based on statutory interpretation, i.e., whether the statute provided a means of relief through a private right of action, not whether GS Labs had standing to sue. GS Labs' standing argument is thus misplaced.

In sum, the Court's dismissal with prejudice of the CARES Act claims in *GS Labs I* constitutes a final judgment on the merits, subjecting the ERISA claim in *GS Labs II* to

res judicata if the fourth element for claim preclusion is met. However, GS Labs' state law claims are not precluded because the Court's dismissal without prejudice of the state law claims in *GS Labs I* cannot serve as a final judgment on the merits. As *Magee* illustrates, the effect of the mixed disposition of claims in *GS Labs I* may lead to partial claim preclusion in *GS Labs II*.

### 2.      Same Claims or Causes of Action

Proceeding to the final element of claim preclusion, GS Labs argues that its ERISA claim does not constitute the same cause of action as the CARES Act claims it asserted in *GS Labs I*. (Pl.'s Opp'n at 35–36, 39.)

In determining whether two causes of action are "the same," the Eighth Circuit follows the Restatement (Second) of Judgments. *Banks v. Int'l Union Elec., Elec., Tech., Salaried & Mach. Workers*, 390 F.3d 1049, 1053 (8th Cir. 2004) (quoting *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990)). Section 24 of the Restatement provides:

> (1)  When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

> (2)  What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24. In conducting this analysis, "[t]he legal theories of the two claims are relatively insignificant because 'a litigant cannot attempt to relitigate the same claim under a different theory of recovery.'" *United States v. Gurley*, 43 F.3d 1188, 1195 (8th Cir. 1994) (quoting *Poe v. John Deere Co.*, 695 F.2d 1103, 1105 (8th Cir. 1982)). Thus, res judicata bars claims arising out of the "same nucleus of operative facts" as a prior claim. *Banks*, 390 F.3d at 1053.  Relevant to this inquiry is whether the facts of both actions are closely "related in time, space, [and] origin," as well as whether they "form a convenient trial unit" based on the same evidence of the defendant's conduct.  *Gurley*, 43 F.3d at 1195 (citations omitted).

Here, GS Labs' ERISA claim shares a common nucleus of operative facts with its CARES Act claim. In the first suit, GS Labs alleged that Medica failed to fully reimburse it for COVID-19 diagnostic testing that it had provided to more than 16,000 Medica insureds. *GS Labs I*, 2022 WL 435742, at *1. No material facts have changed in the present suit, except that GS Labs now alleges that Medica has refused to fully reimburse it for testing provided to more than 35,000 Medica insureds. (Compl. ¶ 1.) This greater number merely represents additional instances of testing and refusal to pay in the "series of connected transactions" between GS Labs, Medica's insureds, and Medica. Restatement (Second) of Judgments § 24. Indeed, dozens of facts that GS Labs alleged in the *GS Labs II* Complaint are copied verbatim from its earlier complaint in *GS Labs I*. (*Compare, e.g.*, Compl. in *GS Labs I*, No. 21-cv-2400, ¶¶ 1–3, 12–23, 27–31, 35, 37–56, 58, *with* Compl. in *GS Labs II*, No. 22-cv-02988, ¶¶ 1–2, 4, 8–14, 16–20, 24–27, 29–30, 33–53, 55); *see also Seenyur v. Van Coolidge*, No. 16-cv-3832 (WMW/BRT), 2018 WL 400758, at *3 (D.

Minn. Jan. 12, 2018) (finding that two claims arose from the same transaction or occurrence because the complaints in the two lawsuits were "materially the same").   Medica's underlying action in both lawsuits—its refusal to fully reimburse GS Labs for diagnostic testing at the publicly-posted cash price—is identical in time, space, and origin. Moreover, the facts of the two cases "form a convenient trial unit," as each lawsuit depends largely on evidence of Medica's actions.  *See Gurley*, 43 F. 3d at 1196.

### a.     Assignment of Rights

The allegations not contained in the *GS Labs I* complaint that are present in the  *GS Labs II* complaint primarily pertain to GS Labs' claim that Medica's insureds "assigned their rights under their respective plans of insurance . . . to GS Labs by agreeing to the following terms in scheduling an appointment with GS Labs[.]" (Compl. ¶ 59.) These allegations relate to GS Labs' new claims of tortious interference and breach of contract as well as its claim under ERISA.  (*Id*. ¶¶ 56–82, 128–34.) However, these limited factual allegations and legal theories do not alter the fact that there is a common nucleus of operative facts between all of these claims.

First, taking these facts as true, the assignments had already occurred when GS Labs filed its complaint in *GS Labs I. Banks*, 390 F.3d at 1053 (noting that "*Banks II* fails to allege additional facts not in existence at the time *Banks I* was filed" and finding that the suits stated the same cause of action). Second, whether two claims share operative facts "should be determined not by the actions of a plaintiff vindicating its rights but by the conduct or alleged conduct of a defendant breaching those rights." *Gurley*, 43 F.3d at 1196. On appeal of *Magee II*, the Eighth Circuit affirmed that the plaintiff's § 1981 claim arose

out of the same nucleus of operative facts as her original § 1983 claim, reasoning that "Magee's § 1981 claim was based at least in part on conduct that the defendants had engaged in at the time she filed her complaint in *Magee I*." *Magee*, 775 F.3d at 1059. Thus, the court found "the gist" of the § 1983 claim in *Magee I* and the § 1981 claim in *Magee II* involved the defendants' same conduct concerning Magee's termination and the events leading up to her termination, in violation of her constitutional rights. *Id*. Here, the gist of Medica's alleged wrongful conduct in *GS Labs II* is identical to the alleged wrongful conduct in *GS Labs I*: its "fail[ure] to provide coverage, and fully reimburse for, the COVID-19 diagnostic testing that GS Labs provided[.]" (Compl. ¶ 133.)

In fact, GS Labs acknowledges that its claims "may 'have their genesis' in the common and overarching general fact of Medica's non-payment for testing." (Pl.'s Opp'n at 36 (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 674 (8th Cir. 1998).) And at oral argument, GS Labs conceded the same. (Jan. 26, 2023 Hearing Tr. at 30:22–24 ("They are, I guess, at a very high level about how Medica is not paying, it's not providing coverage[.]").) The Restatement requires the Court to conduct just such a high-level assessment, "giving weight to . . . whether the facts are related in time, space, origin or motivation[.]" Restatement (Second) of Judgments § 24.[3]

---

[3] The Court notes that GS Labs acknowledges that before this Court dismissed the CARES Act claim in *GS Labs I*, GS Labs considered amending its complaint to add an ERISA claim. (Pl.'s Opp'n at 40; Jan. 26, 2023 Hearing Tr. at 38:3–4.) It did not do so.

By comparison, in *BCBSM*, GS Labs initially asserted in its counterclaims against BCBSM the same five causes of action that it had asserted against Medica in *GS Labs I*. *BCBSM*, No. 22-cv-513 (ECT/DJF) (Answer [Doc. No. 10].) However, when BCBSM moved to dismiss, GS Labs amended its answer to add new counterclaims, including a

In support of its argument that *GS Labs I* and *GS Labs II* do not arise from a common core of operative facts, GS Labs relies on *Costner*, 153 F.3d at 674. (Pl.'s Opp'n at 36; Jan. 26, 2023 Hearing Tr. at 30:6–31:2.)  However, *Costner* is distinguishable. In *Costner*, the prior lawsuits upon which the defendants relied for claim preclusion alleged violations of federal and state environmental laws from waste incineration at a chemical production factory. *Costner*, 153 F.3d at 671–672, 674. The new suit was a *qui tam* action under the False Claims Act ("FCA"), alleging that contractors hired to perform cleanup at the factory knowingly submitted false claims for payment. *Id.* at 670, 673. The Eighth Circuit held that the FCA claim did not arise from the same "nucleus of operative facts" as the environmental suits, explaining, "Although both claims have their genesis in the [factory] site cleanup, they are independent of each other and seek to redress different injuries resulting from *distinct conduct.*" *Id.* at 674 (emphasis added).

By contrast, here, GS Labs' CARES Act and ERISA claims arise from the same injury and the same conduct: Medica's refusal to fully reimburse GS Labs at its requested rate for the COVID-19 testing of Medica's insureds. GS Labs attempts to avoid this fact

---

claim under ERISA §§ 501(a)(3) and 502(a)(1). *Id.* (Am. Answer [Doc. No. 22] ¶¶ 382–93.) That claim arises under the same theory as GS Labs' ERISA claim in this suit: it alleges that, by virtue of assignment, GS Labs may pursue reimbursement for COVID-19 diagnostic tests on behalf of BCBSM's insureds. (*Id.*)  In its litigation with Medica in *GS Labs I*, while GS Labs contemplated the same course of action, it chose not to pursue it. (Pl.'s Opp'n at 40.) It cannot now avoid the consequences of that decision  *See Zurich Cap. Mkts. Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1047 n.2 (N.D. Ill. 2005) ("Rather than add its claims to the first action after learning of their factual basis, ZCM sat on its claims and waited to bring those claims in a second suit.  This is the situation that res judicata is designed to prevent.") (citation omitted).

by arguing it is now "standing in the shoes of patients" to enforce coverage rights under ERISA as opposed to enforcing its own rights under the CARES Act. (Jan. 26, 2023 Hearing Tr. at 27:7–8.) This is simply a change in legal theory, incapable of saving GS Labs' ERISA claim from preclusion. *Gurley*, 43 F.3d at 1195.[4]

###### b.   Injustice

Lastly, GS Labs argues that the dismissal of its case on grounds of claim preclusion would constitute a "sufficiently gross" injustice so as to "'demand a departure' from rigid adherence to the doctrine of res judicata." (Pl.'s Opp'n at 40 (quoting *United States v. Beggerly*, 524 U.S. 38, 46 (1998)).)

The prevailing consensus, however, is that "no principle of law or equity . . . sanctions the rejection by a federal court of the salutary principle of res judicata." *Gurley*, 43 F.3d at 1196 (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981)). While GS Labs relies on *Beggerly* in support of its argument that the Court should depart from the doctrine of res judicate to prevent an injustice against GS Labs, *Beggerly* is distinguishable. First, *Beggerly*, 524 U.S. at 46, involved an attempt to set aside a judgment via an "independent action" under Rule 60(b), which GS Labs has not invoked, and is thus procedurally distinguishable. Second, the Supreme Court had to look back over one

---

[4] Indeed, in *BCBSM*, Judge Tostrud noted that "central to [GS Labs' ERISA counterclaim]" is GS Labs' allegation that the CARES Act amended ERISA plans to require coverage for the full publicly-posted cash price of COVID-19 testing. *BCBSM, Inc.*, 2023 WL 2044329, at \*10. The interconnection of the legal theories supporting GS Labs' CARES Act and ERISA claims underscores their factual connection: the insurers' refusal to fully reimburse GS Labs' for COVID-19 testing at its requested rates.

hundred years to find an example that met the "demanding standard" of a "grave miscarriage of justice" sufficient to warrant departure from the doctrine of res judicata. *Id.* at 47 (citing *Marshall v. Holmes*, 141 U.S. 589 (1891)). In *Marshall v. Holmes*, the plaintiff sought relief from a judgment against her that had been procured by the submission of a forged letter. *Id.* By comparison, the Court found that the *Beggerly* plaintiffs' allegation that the United States had failed to properly search its records and disclose them in the prior suit did not constitute a comparable injustice. *Id.*

Although the Eighth Circuit has not addressed this doctrine, other circuits agree that only instances of "egregious misconduct," such as "bribery of a judge or jury or fabrication of evidence by counsel" rise to the level of a grave injustice. *In re Bressman*, 874 F.3d 142, 153 (3d Cir. 2017); *see also, e.g.*, *Giasson Aerospace Sci., Inc. v. RCO Eng'g Inc.*, 872 F.3d 336, 339 (6th Cir. 2017) ("[T]he injustice must be so severe that enforcement of the original judgment would be manifestly unconscionable." (quotation omitted)).

Even if *Beggerly* and related authority arising under Rule 60(b) applied here, GS Labs' position does not come close to meeting the demanding standard of "egregious misconduct." GS Labs explains that it only considered adding an ERISA claim in light of the "new weight of authority" that patients have assignable rights to benefits for COVID diagnostic testing, as "most fully analyzed" in the May 2022 decision in *Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Ins. Co.*, Civ. No. 20-10345 (KM) (ESK), 2022 WL 1567797, at *2 (D.N.J. May 18, 2022). (Pl.'s Opp'n at 31, 33, 40.) Regardless of whether an ERISA claim was a relatively untested legal theory at the time GS Labs filed its complaint in *GS Labs I*, it could have nevertheless asserted it,

just as it asserted a relatively novel CARES Act claim. In fact, two of the three CARES Act cases addressed by the Court in *GS Labs I*, 2022 WL 4357542, at *5, also involved separate claims arising under ERISA, and the two cases were filed earlier than *GS Labs I*. *See Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20cv1675 (JBA) (Compl. [Doc. No. 1] ¶¶ 89–99) (D. Conn. Nov. 6, 2020); *Diagnostic Affiliates of Ne. Hou, LLC v. United Healthcare Servs., Inc.*, No. 2:21-cv-00131 (Am. Compl. [Doc. No. 2] ¶¶ 197–212) (S.D. Tex. June 29, 2021). The Court disagrees that any uncertainty surrounding the legal viability of an ERISA claim in this context warrants a departure from the doctrine of res judicata.

In sum, the Court finds that the CARES Act claim in *GS Labs I* and the ERISA claim in this case share a common nucleus of operative facts. With all four elements of res judicata met, GS Labs, therefore, is precluded from proceeding with its ERISA claim. Accordingly, the Court grants Medica's motion to dismiss GS Labs' ERISA claim (Count V) with prejudice.

### C.   Supplemental Jurisdiction

The Court can decline to exercise supplemental jurisdiction if it has dismissed "all claims over which it has original jurisdiction." 28 U.S.C. § 1367 (c)(3). The Supreme Court has stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The same considerations that weighed against exercising supplemental jurisdiction in *GS Labs I* are present here. *GS Labs I*, 2022 WL 4357542, at *12–13 (citing *Carnegie-Mellon*, 484 U.S. at 350 n.7). Because this case is in an early procedural posture and the Court has not invested significant resources to reach this ruling, the interests of judicial economy and convenience do not weigh heavily in favor of retaining supplemental jurisdiction. *See id*. Nor is there any risk of unfairness, as "litigants knowingly risk the dismissal of pendent claims when they invoke the court's discretionary supplemental jurisdiction." *Marianist Province of U.S. v. City of Kirkwood*, 944 F.3d 996, 1003 (8th Cir. 2019) (citation omitted) (cleaned up). Moreover, with two additional state law claims, the interest of comity favors resolution by a Minnesota state court even more so than in *GS Labs I. See GS Labs I*, 2022 WL 4357542, at *12–13.

Finally, the procedural history of this case weighs in favor of declining to retain supplemental jurisdiction. The district court in *Magee* declined to exercise supplemental jurisdiction over the plaintiff's state law claims after determining that her § 1981 claim was precluded by her earlier suit. *Magee*, 1 F. Supp. 3d at 978–79. After assessing the typical factors and finding that they weighed against exercise supplemental jurisdiction, the court further explained:

> [R]efusing to exercise supplemental jurisdiction is consistent with [the Court's] determination on res judicata and its disposition in *Magee I*. It would undermine the Court's discretion regarding the exercise of supplemental jurisdiction if the parties could circumvent the Court's decision to decline to exercise supplemental jurisdiction by merely later asserting new federal claims and removing those claims to federal court.

*Id.* at 978.

The same concerns apply here. Therefore, for all of these reasons, the Court declines to exercise supplemental jurisdiction over GS Labs' state law claims and dismisses them without prejudice. *Johnson v. City of Pine Bluff*, 450 Fed. App'x 557, 558 (8th Cir. 2012) (holding that where district court declines to exercise supplemental jurisdiction over state law claims, claims should be dismissed without prejudice).

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Doc. No. 10] is **GRANTED**.

2. The following count in the Complaint [Doc. No. 1-1] is **DISMISSED WITH PREJUDICE**:  Count V (ERISA § 502(a)(1)(B)).

3. The following counts in the Complaint [Doc. No. 1-1] are **DISMISSED WITHOUT PREJUDICE**:  Counts I (unjust enrichment), II (negligence per se), III (tortious interference with prospective economic advantage), and IV (breach of contract).

4. Defendant's Motion to Stay Discovery Pending Resolution of Motion to Dismiss [Doc. No. 27] is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: April 13, 2023                                   s/Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge